## SNYDER *v.* A FLOATING DRY-DOCK, etc.

*(District Court, D. New Jersey. December 19, 1884.)*

ADMIRALTY JURISDICTION—ACTION TO RECOVER POSSESSION OF DRY-DOCK.

    A suit to recover the possession and delivery of a floating dry-dock with a floating pump, which is not a vessel, or constructed or used in navigation or commerce, cannot be maintained in admiralty.

In Admiralty. Libel *in rem.*

*J. A. Hyland,* for libelant.

*Anson B. Stewart,* for respondent.

NIXON, J. This suit is *in rem,* and is in the nature of a possessory action to recover the possession and delivery to the libelant of a floating dry-dock and floating pump, alleged in the libel to be her property. Her right of ownership is not denied in the answer, but the respondent, Thomas W. Mabb, claims that he has a lien upon the structure for wharfage, and has the right to retain the possession until his demand is paid. The answer also raises the question of jurisdiction, and denies the right of the libelant to maintain such a suit in the admiralty. It must be conceded that the thing libeled is not a vessel constructed or used for the business of navigation or commerce. It is called a dry-dock, and is a structure capable of being elevated or depressed in the water by pumping out or pumping in water, and is used by being sunk under vessels, and then pumped out whereby the inclosed vessel is raised to a position where it can be inspected and repaired, thus saving the necessity of running the vessel on land by a marine railway, as is usually done for such purposes.

The proctor for the libelant mainly relied upon the case of *The Steam-tug M. R. Brazis,* 10 Ben. 437, in support of the jurisdiction. It was there held that the test of jurisdiction in respect to torts is whether the place of the alleged injury is upon the water. Numerous cases affirm that proposition, but it is not applicable to the present case. If this were an action *in rem* against the dry-dock, alleging damage from a maritime tort, as, for instance, from a collision, the suit would be maintainable, for the reason that the tort was upon the water and the dry-dock was the offender, but a petitory suit, *i. e.,* one involving mere title to property, and a possessory suit, —one which seeks to restore to the owner the possession of which he has been unjustly deprived,—are quite different matters. For a long time the admiralty courts declined jurisdiction over the former, and in England, since the Restoration, it was never exercised until the statute of 3 & 4 Vict. *c.* 65, § 4, restored to the admiralty the jurisdiction which it had lost through the jealousy of the common-law courts. Judge STORY, in the well-considered case of *The Tilton,* 5 Mason, 465, refused to follow the English courts in what Lord STOWELL called their habitual "abstemiousness" from exercising their undoubted powers, and in this he was afterwards sustained by the supreme court in *Ward* v. *Peck,* 18 How. 267. But a careful examination of these cases will show that actions of this sort are not appropriate where questions are in controversy which respect only the ownership or possession of vessels engaged in commerce or navigation. I am not aware of any respectable authority which holds that they will lie against hulks or structures that are not thus engaged. The cases of *Tome* v. *Four Cribs of Lumber,* Taney, C. C. 533, and *The Hendrick Hudson,* 3 Ben. 419, sustain this view. In the former Chief Justice TANEY says:

The result of this opinion is that rafts anchored in the stream, although it be a public navigable river, are not the subject-matter for admiralty jurisdiction in cases where the right of property or possession is alone concerned. They are not vehicles intended for the navigation of the sea, nor are they recognized as instruments of commerce or navigation by any act of congress.

The latter was a libel *in rem* against a floating steam-boat which had been dismantled and stripped of her boiler, engine, and paddle-wheels, and fitted up as a saloon and hotel. It was capable of being towed from place to place on the river. Whilst being thus towed she sank, and the libelants were applied to for the use of their propeller for pumping out the hulk to give it more floating power. The service was rendered, and the libel was filed to recover as for a salvage service. It was set up in defense that the boat was without motive power, was not used in commerce, and that the court had no jurisdiction to proceed *in rem* against her. The learned Judge BLATCHFORD, waiving the question whether the structure would or would not be liable *in rem* in the admiralty for a tort or injury committed by it on navigable waters, held that the libel must be dis-

missed for the reason that the hulk was not in any proper sense engaged in commerce. "A floating house of religious worship," he says, "or a floating swimming bath, or a floating residence, could be towed, and, in such a sense, navigated;" but such a structure would not be engaged in navigation in such a sense as to be liable *in rem* in the admiralty for a service like the present one. The fact that the structure has the shape of a vessel, or had been once used as a vessel, or could, by proper appliances, be again used as such, cannot affect the question. The test is the actual *status* of the structure as being fairly engaged in commerce or navigation.

The libel must be dismissed for want of jurisdiction, and hence no order respecting costs can be made.