**Louis L. ATKINS, Plaintiff-Appellant,**

v.

**GREENVILLE SHIPBUILDING CORPO- RATION, Defendant-Appellee.**

**No. 26550.**

United States Court of Appeals
Fifth Circuit.

May 12, 1969.

280

Fountain D. Dawson, Greenville, Miss., Robert G. Hebert, Kierr & Gainsburgh, New Orleans, La., for appellant.

James L. Robertson, Fred C. DeLong, Jr., Roy D. Campbell, Jr., Greenville, Miss., for appellee.

Before THORNBERRY and DYER, Circuit Judges, and FISHER, District Judge.

DYER, Circuit Judge:

Atkins, a shore-based welder and fitter employed on Greenville Shipbuilding Corporation's floating drydock, sustained injuries when a ladder, which he was using to ascend a barge brought onto the drydock for major repairs, slipped causing his fall to the drydock's floor. Although he received compensation from Greenville under the Longshoremen's and Harbor Workers' Compensation Act,[1] Atkins, claiming to be a Reed v. Yaka[2] seaman not limited exclusively to the remedies of the Act, sued his employer Greenville for breach of the maritime warranty of seaworthiness, alleging that the floating drydock was a "vessel" and that the ladder was a part of its gear and tackle. Greenville moved for summary judgment on the grounds that no warranty of sea-

worthiness was owed to Atkins because the floating drydock was not a "vessel" and because Atkins was not doing a seaman's traditional work. The District Court granted the motion upon the latter ground; we affirm on the former.

Greenville Shipbuilding Corporation is engaged in the business of designing, constructing and repairing steel vessels, barges, towboats, floating drydocks and marine vessels at its shipyard on the banks of Lake Ferguson, a navigable waterway near Greenville, Mississippi, on the Mississippi River. As an instrument for the repair of vessels at its Lake Ferguson shipyard, during the years 1961–62 Greenville constructed a floating drydock which since that time has been floating upon the lake's waters permanently affixed to the bank of the lake. The dock itself, a large flat surface, is lowered from its floating position within a steel frame by pumping water into watertight compartments. Next the vessel to be repaired is situated above it, after which the dock is raised by pumping air into the compartments. The buoyancy lifts dock and vessel for accessibility to repairmen. The drydock's position is maintained on the waterfront by cables running to the bank. It is in the exact position in which it was placed upon construction, and it was neither designed for nor used for navigation or transportation. The floating drydock is without motive power and could only be moved upon water from one place to another by being towed or by other outside power.

On July 26, 1966, the Barge K.C.B. 300 was placed on the drydock for major repairs to eliminate leaks, requiring among other things removal and replacement of two sections below her waterline and welding of various cracks. This work could only be done by removing the barge from the water.

Atkins, a welder and fitter employed by Greenville, worked on the barge that

1.  33 U.S.C.A. § 901 et seq.

2.  Reed v. The Yaka, 1963, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448.

day. In mid-afternoon he began ascending a ladder leading from the floor, or "dock", of the floating drydock to the barge. The ladder slipped, and Atkins fell to the floor of the drydock, sustaining injuries.

As a result of the accident, Atkins made a claim for compensation under the Longshoremen's and Harbor Worker's Compensation Act, and since filing the claim has received and accepted benefits of approximately three thousand dollars. On June 30, 1967, Atkins filed his complaint alleging injuries sustained due to the unseaworthiness of a "vessel" owned by Greenville, specifically alleging injuries resulting from a defective and unseaworthy ladder which was part of the vessel's gear and tackle. Greenville defended the unseaworthiness claim upon the grounds that Atkins was not doing traditional seamen's work and that the floating drydock was not a "vessel". The District Court, finding no material facts to be in dispute, held that Atkins was not engaged in work traditionally that of a seaman and entered summary judgment in favor of Greenville.

Atkins is clearly within the compensation provisions of the Longshoremen's Compensation Act,[3] and Greenville is equally as clearly an employer under the Act.[4] However, Atkins seeks to avoid the Act's exclusiveness of liability section,[5] which quite explicitly would preclude any further recovery against Greenville, the employer, if the section is given its literal meaning. His technique of avoidance is manipulation of the doctrine of seaworthiness, which as amplified by Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, and its progeny, Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L. Ed. 133; Reed v. The Yaka, 1963, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448; Jackson v. Lykes Bros. Steamship Co., 1967, 386 U.S. 731, 87 S.Ct. 1419, 18 L. Ed.2d 488, has resulted in metastasis, if not emasculation, of the Act's exclusiveness of remedies provision. In *Sieracki* the Supreme Court extended the scope of the maritime warranty of seaworthiness in favor of shore-based employees, including longshoremen, engaged aboard a vessel in work customarily or traditionally performed by seamen, thus allowing longshoremen under the Act to recover against third persons. *Reed* and *Jackson* extended the *Sieracki* extension to allow longshoremen, independently of the Act or its exclusiveness of remedies provision, to recover directly from their employers for injuries resulting from unseaworthiness where the employer is the owner of or has an operational interest in the vessel.

However, regard for the historical development of the warranty of seaworthiness and appreciation of the influences upon its development from The Osceola, 1903, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760, through *Sieracki, Reed* and *Jackson,* reveals that Atkins cannot so easily ensconce himself within the expanded scope of the warranty. With the advent of an increasingly complex and dangerous maritime service it was held that the owners owed to the seaman the duty of furnishing a seaworthy vessel and safe and proper appliances in good order and con-

3. The Act provides that compensation shall be payable "if the disability or death results from an injury occurring upon the navigable waters of the United States (*including any dry dock*) * * *. 33 U.S.C.A. § 903(a) (emphasis added). See Avondale Marine Ways, Inc. v. Henderson, 1953, 346 U.S. 366, 74 S.Ct. 100, 98 L.Ed. 77; Travelers Insurance Company v. Shea, 1967, 382 F.2d 344, 347–348.

4. 33 U.S.C.A. § 902(4) provides that an "employer" under the Act is an employer "any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (*including any drydock.*) [Emphasis added.]

5. 33 U.S.C.A. § 905 provides in pertinent part:
   The liability of an employer * * * shall be exclusive and in place of all other liability of such employer to the employee * * * at law or in admiralty on account of such injury * * *.

dition. *The Osceola, supra. See* The State of Maryland, 4 Cir. 1936, 85 F.2d 944. In *Sieracki*, by a willingness to recognize substance over form, the warranty was made applicable to those "doing a seaman's work and incurring a seaman's hazards," *Sieracki, supra* 328 U.S. at 99, 66 S.Ct. at 880, despite " 'the fortuitous circumstance' of their employment by one other than the owner to do the ship's work," or "more modern divisions of labor." *Id.* at 98, 96, 66 S.Ct. at 879. Others doing a seaman's traditional work have been included within the warranty. *E. g.,* Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143. In addition to expanding the class of persons covered by the warranty, due to the emergence of special purpose craft, the vessels owing the warranty in recent years also have become more diverse; again through recognition of substance over form. *See* Offshore Company v. Robison, 5 Cir. 1959, 266 F.2d 769, 75 A.L.R.2d 1296.

■ But despite expansions of the warranty because of the technical progress of the modern maritime service, tradition plays an important role. While the *Sieracki, Reed* and *Jackson* decisions in one sense expanded the scope of the warranty, implicit within their rationale is the limiting factor of tradition. The limitation requires that the injured shore-based worker be engaged in work traditionally that of a seaman, United N. Y. and N. J. Sandy Hook Pilots Association v. Halecki, 1959, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541, excluding those persons performing such tasks as making major repairs requiring drydocking or special skills. *See* West v. United States, 1959, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161; Ocean Drilling & Exp. Co. v. Berry Bros. Oilfield Service, 5 Cir. 1967, 377 F.2d 511; Union Carbide Corporation v. Goett, 4 Cir. 1958, 256 F.2d 449; Berge v. National Bulk Carriers Corporation, 2 Cir. 1958, 251 F.2d 717; Berryhill v. Pacific Far East Line, 9 Cir. 1956, 238 F.2d 385. By the same token, the craft or structure said to owe a warranty of seaworthiness must fall within the traditional category of "vessels." *Cf.* Offshore Company v. Robison, *supra* 266 F.2d at 781.

Concentrating upon Atkins' duties in making major repairs to the barge placed on the drydock, the District Court held that Atkins was not engaged in work traditionally that of a seaman, hence denying recovery because he was outside the class of persons within the warranty's coverage. In doing so the District Court deemed it unnecessary to decide whether the floating drydock was a "vessel" owing a warranty of seaworthiness. We disagree with that approach.

■ In view of this Court's decision in Offshore Company v. Robison, *supra,* the initial determination must be whether the craft or structure upon which the shore-based worker was injured is a "vessel" owing a warranty of seaworthiness. Only following a determination that the craft or structure is a "vessel" does it become necessary to decide whether the worker's duties were those traditionally performed by seamen, *Halecki, supra,* or in the case of unconventional specialty craft, duties contributing to the accomplishment of the vessel's mission, Offshore Company v. Robison, *supra,* in which case the warranty of the vessel's seaworthiness would be owing to the plaintiff.

■ Although the District Court made no determination whether the floating drydock *sub judice* was a "vessel" owing a warranty of seaworthiness, since no material facts are in dispute as to the nature, purpose or character of the structure this Court may make that determination. The appellant contests only the ultimate fact whether a floating drydock is a special purpose vessel owing a warranty of seaworthiness, not whether the floating drydock was in fact a floating drydock, and contends that the ultimate determination can only be made by a jury. We disagree and hold as a mat-

ter of law that the floating drydock *sub judice* was not a "vessel" owing a warranty of seaworthiness.

Since Cope v. Vallette Dry-Dock Company, 1887, 119 U.S. 625, 7 S.Ct. 336, 30 L.Ed. 501, if not before, Snyder v. A Floating Dry Dock, D.N.J. 1884, 22 F. 685, it has been clear that a floating drydock is not a "vessel". Cope v. Vallette Dry Dock Company, *supra,* held that a floating drydock was not a "vessel" for purposes of salvage. The same considerations are applicable to whether a warranty of seaworthines is owed. "A fixed structure such as this dry-dock is, not used for the purpose of navigation, is not a subject of salvage service, any more than is a wharf or a warehouse when projecting into or upon the water." *Cope, supra* 119 U.S. at 627, 7 S.Ct. at 337. Mere flotation on water does not constitute a structure a "vessel" for purposes of salvage nor warranty of sea worthiness. The element of risk and exposure to the hazards of the sea, necessary for the operation of and common to both principles, is absent upon floating drydocks. *Compare* Cope v. Vallette Dry-Dock Co., *supra* at 627–629, 7 S.Ct. 336, *with* Seas Shipping Co. v. Sieracki, *supra* 328 U.S. at 93–95, 99, 66 S.Ct. 872. While ordinarily "[a]ttempts to fix unvarying meanings [that] have a firm legal significance to such terms as 'seaman', 'vessel', 'member of a crew' must come to grief on the facts," Offshore Company v. Robison, *supra* 266 F.2d at 779, no particular difficulties are here presented.

We find nothing in Producers Drilling Company v. Gray, 5 Cir. 1967, 361 F.2d 432, or Bernardo v. Bethlehem Steel Company, 2 Cir. 1963, 314 F.2d 604, which requires departure from the settled rule that a floating drydock is not a vessel. The former dealt with a barge, which it is well settled may be a vessel, *Producers Drilling, supra* 361 F.2d at 435, and in *Bernardo* the Court was not called upon to make the determination we here make. *Supra* 314 F.2d at 608.

Affirmed.