John L. PEYTAVIN

v.

GOVERNMENT EMPLOYEES INSUR-
ANCE COMPANY et al.

Civ. A. No. 70-2681.

United States District Court,
E. D. Louisiana,
New Orleans Division.

April 22, 1971.

Lloyd Himel, of Martin, Himel & Pey-
tavin, Lutcher, La., for plaintiff.

Frank B. Hayne, III, of Hammett,
Leake & Hammett, New Orleans, La.,
for defendants.

BOYLE, District Judge:

This suit [1] arises out of an automobile
accident which occurred in September of
1969 on a floating pontoon in the Mis-
sissippi River within St. James Parish,
Louisiana. While parked on the floating
pontoon and waiting in line to obtain a
ticket for the Lutcher to Vacherie ferry,
the station wagon in which plaintiff was
seated was struck from the rear by an
automobile driven by Mrs. Eva Bour-
geois, wife of Robert J. Dufresne, Jr.,
the vehicle's owner. In this accident
plaintiff allegedly sustained personal in-
jury.

Defendants filed a motion to dismiss
the complaint, urging that there was
neither diversity of citizenship nor was
the suit within the Court's admiralty ju-
risdiction. Allegations in the complaint
reveal that the plaintiff and defendants
Mr. and Mrs. Dufresne are all citizens
of Louisiana and only the defendant in-
surance company is not a Louisiana citi-
zen. These facts were conceded by
counsel for plaintiff on oral argument of
the motion; there is, therefore, no di-
versity between plaintiff and the de-
fendants Mr. and Mrs. Dufresne. Nor
would there be diversity as to the de-
fendant foreign insurer if the Dufresnes
were not joined for where the insurer is
sued in a direct action on a policy of lia-
bility insurance, said insurer would be
deemed to have the same citizenship as

1. It has been brought to this Court's at-
tention that plaintiff herein is currently
pursuing a state court action against de-
fendants herein arising out of the very ac-
cident which forms the basis of this suit.

the insured Dufresnes. 28 U.S.C. § 1332(c).

To maintain this action counsel for plaintiff held firmly to his claim of admiralty jurisdiction. In opposition, counsel for defendant argued that the pontoon ferry ramp should be judicially recognized as an extension of land. Whether this suit, arising out of an automobile accident, can be brought within the admiralty jurisdiction is the sole issue to be decided.

The undisputed facts as developed on oral argument and obtained from plaintiff's complaint show that the Dufresne vehicle was proceeding down the ferry ramp and that the point of impact with plaintiff's car occurred on the east bank Lutcher ferry pontoon. The floating pontoon was used for loading and unloading the ferry; it was fastened to the shore by means of two cables. At the time of the accident said pontoon was not floating free; the cables, however, could be loosened or tightened to adjust to the rise and fall of the river.

In support of his claim of maritime jurisdiction plaintiff urges the Court to accept Byrd v. Napoleon Ave. Ferry Co., 125 F.Supp. 573 (E.D.La.1954), affd. 227 F.2d 958 (5th Cir. 1955), cert. denied 351 U.S. 925, 76 S.Ct. 783, 100 L. Ed. 1455 (1956), for the proposition that an automobile accident on a floating ferry pontoon is compensable in admiralty. The Byrd case involved a libel for the death of a husband and injuries sustained by the wife passenger in an automobile which plunged into the Mississippi River while exiting from a ferry. It should be emphasized that the accident occurred while libelant was in the process of leaving the vessel and that such accidents have previously been recognized in admiralty even where the injury was sustained on land. The Admiral Peoples, 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633 (1935). The rationale in such cases being that the injuries occur in connection with a part of the vessel and are caused by the failure to provide a reasonably safe means of debarking. Tullis v. Fidelity and Casualty Company of New York, 397 F.2d 22 (5th Cir. 1968).

The fact that the automobile, in Byrd, passed over ten feet of a floating pontoon barge before plunging into the river does not make that decision controlling over an accident occurring on a floating pontoon where neither party is in the process of embarking or disembarking from a ferry. Furthermore, it does not appear in Byrd, where a libel was filed against the ferry owner, that the question of admiralty jurisdiction was in issue, nor was it ever contended that the accident occurred on an extension of land.

■■ We look instead to the maritime jurisprudence which provides the principles which are controlling of this jurisdictional issue. When a tort occurs on navigable waters, the resulting claim is one that lies within the jurisdiction of admiralty courts. The Plymouth, 3 Wall 20, 70 U.S. 20, 18 L.Ed. 125 (1866). But the admiralty jurisdiction does not extend to accidents occurring on land or extensions of land such as piers, jetties, bridges, or even ramps or railways running into the sea except where the Admiralty Extension Act [2] would apply. Rodrigue v. Aetna Casualty and Surety Company, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969).

In order to determine whether the floating pontoon barge, on which this accident occurred, should be characterized as an extension of land, it is necessary to consider its nature and primary purpose. Such an approach has recently been approved by the Fifth Circuit Court of Appeals in Cookmeyer v. Louisiana Department of Highways, 433 F. 2d 386, affg. 309 F.Supp. 881 (E.D.La. 1970).

The primary purpose of this ferry pontoon was to serve as a connecting span between the east bank of the Mississippi River and the Lutcher ferry

2. 62 Stat. 496, 46 U.S.C. § 740.

when said ferry docked to receive and discharge its passengers. During such time it was used to allow vehicular traffic to flow to and from the ferry. It does not appear that it was ever intended that this pontoon ply the navigable waters of the United States or carry goods and passengers in commerce; it functioned primarily as a dock. At the time of the accident the ferry pontoon was firmly secured to the shore by two cables; its only movement came in tightening or loosening the cables to compensate for the various stages of the river.

It has been noted that a *vessel* moored to a dock does not become an extension of the land nor do other structures secured to the shore by *temporary* means. Hastings v. Mann, 340 F.2d 910 (4th Cir. 1965). But in light of the above discussion concerning the nature and purpose of the floating pontoon, it is evident that said structure is not a vessel. Evansville & Bowling Green Packet Co. v. Chero Cola Bottling Co., 271 U.S. 19, 46 S.Ct. 379, 70 L.Ed. 805 (1926); Cope v. Vallette Dry Dock Co., 119 U.S. 625, 7 S.Ct. 336, 30 L.Ed. 501 (1887); Cookmeyer v. Louisiana Department of Highways, supra; Hayford v. Doussony, 32 F.2d 605 (5th Cir. 1929). It should also be noted that on oral argument counsel for the plaintiff did not contend that the floating pontoon was moored in a temporary manner.

The factors considered by the Supreme Court in Evansville & Bowling Green Packet Co. v. Chero Cola Bottling Co., supra, provide considerable insight in analyzing the concepts of purpose and nature in determining the question of a structure's status. There the court refused admiralty jurisdiction by holding that a wharfboat was not a vessel for purposes of limitation of liability. The Court made the following observations: the wharfboat was secured to the shore by four or five cables, and remained at the same point, except when moved to conform to the stage of the river; there were floats and an apron making a driveway between the land and a door near each end; the wharfboat was used to transfer freight between steamboats and land; it was an aid to river traffic, but it was not used to carry freight from one place to another; it performed no function that might not have been performed as well by an appropriate structure on the land. These very same remarks could be used in describing the floating pontoon at the east bank of the Lutcher to Vacherie ferry landing.

The Supreme Court has also held that a dry-dock is not a vessel for purposes of salvage because the dry-dock in question, a fixed structure, was not used for purposes of navigation. Cope v. Vallette Dry-Dock Co., supra. The Fourth Circuit has recognized that a dry-dock, in service and permanently moored to the shore, has most of the attributes of an extension of land but could be considered a vessel when under tow, in navigable waters, and provided with navigational equipment. United States v. Moran Towing & Transportation Co., 374 F.2d 656 (4th Cir. 1967).

This Court has recently held that a motorcycle accident on a pontoon bridge was not within the admiralty jurisdiction. *Cookmeyer*, supra. There we noted the Fifth Circuit's comment that "mere flotation" will not constitute a structure a "vessel" when considered in the context of seaworthiness. In so commenting, it held that a floating dry-dock was not a vessel. Atkins v. Greenville Shipbuilding Corp., 411 F.2d 279, 283 (5th Cir. 1969).

◼ In light of the maritime principles discussed above and the analysis of the purpose and function of the floating ferry pontoon in question, we find that said pontoon, not a vessel, is more in nature of those structures falling within the extension of land doctrine. We find little difference between this ferry pontoon and piers or wharves extending over navigable waters which are designed and used for providing access to vessels afloat for people and land based vehicles and equipment. In finding that

this floating pontoon, secured to the shore and functioning as a dock or road-way, is an extension of land, it follows that an automobile accident having a situs thereon is not subject to the maritime jurisdiction of this Court.

The motion to dismiss for lack of jurisdiction, diversity and maritime, is hereby granted.