**Robert D. COOK, Plaintiff-Appellant,**

v.

**BELDEN CONCRETE PRODUCTS, INC., Division of Rockwin Corporation, Defendant-Appellee.**

No. 72–3083
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Jan. 12, 1973.

Rehearing and Rehearing En Banc Denied March 12, 1973.

* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of N. Y., 431 F.2d 409, Part I (5th Cir. 1970).

Carl J. Barbier, New Orleans, La., for plaintiff-appellant.

Thomas J. Wyllie, Harold A. Thomas, New Orleans, La., for defendant-appellee.

Before BELL, DYER and CLARK, Circuit Judges.

1. 33 U.S.C. §§ 901–950.

2. 46 U.S.C. § 688.

CLARK, Circuit Judge:

Appellant Robert D. Cook sustained serious injuries to his arm in a fall from a ladder aboard a floating construction platform moored in navigable waters alongside the appellee's concrete yard. Seeking recovery in excess of the compensation provided by the Longshoremen's and Harbor Workers' Compensaion Act,[1] Cook sued his employer, Belden Concrete Products, alleging jurisdiction under the Jones Act[2] and general maritime law.[3] The district court granted summary judgment in favor of Belden. We affirm.

The construction platform where the injury occurred consisted of a flat-deck barge approximately 180 by 54 feet upon which Belden employees fabricated concrete barges. The platform had no motive power and could be moved only by the use of tugboats or land-based cranes. It was equipped with pipes and pumps for flooding or evacuating its interior compartments thus permitting its deck to be submerged to launch completed barges. During the fabrication of barges the platform would occasionally be moved to different positions alongside the defendant's dock to pick up materials. Upon the completion of construction of a set of barges the platform would be towed a short distance into deeper water for launching.

At the time of his injury, Cook was employed as a carpenter erecting forms preparatory to pouring concrete for a second deck on a half-completed barge. The construction platform was secured to appellee's dock by ropes—the normal method of mooring the platform during the construction process.

This appeal focuses on one issue: whether, as a matter of law, the construction platform was a vessel for maritime jurisdictional purposes. Although the precise question is one of first impression we find the platform legally indistinguishable from a floating dry dock

3. See e. g., Reed v. The Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963) and the cases cited therein.

which, at least while it is secured to land, is not a vessel for purposes of the Jones Act or general maritime law. Keller v. Dravo Corp., 441 F.2d 1239 (5th Cir. 1971), cert. denied 404 U.S. 1017, 92 S. Ct. 679, 30 L.Ed.2d 665 (1972); Chahoc v. Hunt Shipyard, 431 F.2d 576 (5th Cir. 1970), cert. denied 401 U.S. 982, 91 S.Ct. 1198, 28 L.Ed.2d 333 (1971); Atkins v. Greenville Shipbuilding Corp., 411 F.2d 279 (5th Cir.), cert. denied 396 U.S. 846, 90 S.Ct. 105, 24 L.Ed.2d 96 (1969).[4]

As this court pointed out in the *Atkins* decision:

> Since Cope v. Vallette Dry-Dock Company, 1887, 119 U.S. 625, 7 S.Ct. 336, 30 L.Ed. 501, if not before, Snyder v. A Floating Dry Dock, D.N.J., 1884, 22 F. 685, it has been clear that a floating drydock is not a "vessel". Cope v. Vallette Dry Dock Company, *supra*, held that a floating drydock was not a "vessel" for purposes of salvage. The same considerations are applicable to whether a warranty of seaworthiness is owed. "A fixed structure such as this dry-dock is, not used for the purpose of navigation, is not a subject of salvage service, any more than is a wharf or a warehouse when projecting into or upon the water." *Cope, supra* 119 U.S. at 627, 7 S.Ct. at 337. Mere flotation on water does not constitute a structure a "vessel" for purposes of salvage nor warranty of seaworthiness. The elements of risk and exposure to the hazards of the sea, necessary for the operation of and common to both principles, is absent upon floating drydocks.

■ The appellant argues that *Cope* and *Atkins* are distinguishable since the dry docks there determined not to be vessels were permanently secured to the bank, while in the instant case the floating construction platform was capable of limited movement and was, in the normal course of its service, towed from point-to-point in the navigable waters off the Belden concrete yard.[5] The permanence of fixation, however, is not the criterion which governs the maritime status of floating dry docks and similar structures. As the Supreme Court pointed out in The Robert W. Parsons the "determinative factors upon the question of jurisdiction [are] the purpose for which the craft was constructed and the business in which it is engaged." 191 U.S. 17, 30, 24 S.Ct. 8, 12, 48 L.Ed. 73 (1903).

■ Conventional ships and barges as well as such unconventional craft as submersible drilling barges and floating dredges which are designed for navigation and commerce are vessels within general maritime and Jones Act jurisdiction and retain such status even while moored, dry-docked, or otherwise immobilized and secured to land. Cope v. Vallette Dry Dock, *supra*, 119 U.S. at 627–628, 7 S.Ct. at 337 (ship made fast to wharf); Union Barge Line v. Allen, 239 F.Supp. 1004 (E.D.La.1965), aff'd 361 F.2d 217 (5th Cir. 1966), cert. denied, 385 U.S. 1006, 87 S.Ct. 713, 17 L. Ed.2d 545 (1967) (tugboat in dry dock); Marine Drilling Co. v. Austin, 363 F.2d 579 (5th Cir. 1966) (submersible drilling barge "stabilized in navigable waters"); Producers Drilling Co. v. Gray, 361 F.2d

---

4. *Also see* Bernardo v. Bethlehem Steel Co., 314 F.2d 604 (2d Cir. 1963); DeMartino v. Bethlehem Steel Co., 164 F.2d 177 (1st Cir. 1947).

5. Depositions and answers to interrogatories also disclose that the construction platform had been towed for a considerable distance from its place of construction to the Belden yard and subsequently from there to Avondale Shipyard for repairs. While a floating dry dock under tow in navigable waters may for a limited time become a subject of maritime jurisdiction, United States v. Moran Towing & Transportation Co., 374 F.2d 656 (4th Cir. 1967), neither the capability for such movement nor the fact that the dock has been moved through navigable waters in the past establishes that the dock while secured to the bank and in service is a vessel. Chahoc v. Hunt Shipyard, *supra*, 431 F.2d at 576, n. 2. *See* Evansville & Bowling Green Packet Co. v. Chero Cola Bottling Co., 271 U.S. 19, 46 S.Ct. 379, 70 L.Ed. 805 (1926).

432 (5th Cir. 1966) (submersible drilling barge "resting on the bottom of a canal"); Offshore Co. v. Robison, 266 F.2d 769 (5th Cir. 1959) (mobile drilling platform jacked out of water on its own legs); Kibadeaux v. Standard Dredging Co., 81 F.2d 670 (5th Cir.) cert. denied, 299 U.S. 549, 57 S.Ct. 12, 81 L.Ed. 404 (1936) (floating dredge without motive power connected to shore by pontoons). However, unlike these craft which the law dictates must retain their seaworthy status even while temporarily affixed to land, the construction platform involved in this case was not designed for transportation of passengers, cargo, or equipment from place to place across navigable waters. Of course, some movement, both perpendicular and lateral, is necessarily part of the regular operation of floating dry docks and similar structures. However, capability to sustain such movement has been held insufficient to establish that such craft are constructed for the purpose of navigation. The Robert W. Parsons, *supra;* Berton v. Tietjen & Lang Dry Dock Co., 219 F. 763, 774–775 (D.N.J.1915).

Although the floating construction platform was not designed for the purpose of navigation, the structure might be classified as a vessel subject to the liabilities arising from an allegedly unseaworthy condition, if at the time of appellant's injury it had actually been engaged in navigation. However, from the pleadings and depositions it is clear that at the time of the mishap the craft was secured to the appellee's dock and engaged in its primary function as a stationary construction platform. Under this circumstance, we find the status of the craft governed by the proposition that, "as a matter of law, a floating dry dock is not a vessel *when it is moored and in use as a dry dock.*" Keller v. Dravo Corp., *supra,* 441 F.2d at 1239; Chahoc v. Hunt Shipyard, *supra;* Atkins v. Greenville Shipbuilding Corp., *supra.*[6]

Since the undisputed material facts indicate that Belden's construction platform was not a vessel within the scope of the Jones Act or general maritime jurisdiction, the grant of summary judgment was proper.

Affirmed.

---

6. Appellant urges that we distinguish case *sub judice* from *Keller* on the basis that here the mooring was by ropes and there it was by chain and cable. This is a distinction without legal difference.