George BUNA, Plaintiff,

v.

PACIFIC FAR EAST LINE, INC., a corporation, Defendant.

No. C–77–0609–CBR.

United States District Court, N. D. California.

Dec. 14, 1977.

Morton L. Silvers, San Francisco, Cal., for plaintiff.

Acret & Perrochet, G. M. Perrochet, J. S. Pierce, San Francisco, Cal., for defendant.

## MEMORANDUM OF OPINION

RENFREW, District Judge.

On March 23, 1977, plaintiff George Buna filed this seaman's action for damages for personal injury. Buna was allegedly injured on March 26, 1976, while working aboard one of defendant Pacific Far East Line, Inc.'s ("PFEL") paint floats, PFEL Barge # 1, in the vicinity of Pier 35, San Francisco, California. Plaintiff's complaint asserts causes of action under the Jones Act, 46 U.S.C. § 688, and under general maritime law. On August 25, 1977, defendant filed a motion for summary judgment. The company argues that plaintiff is not entitled to bring these claims because he was not a "member of a crew" of any "vessel" and was therefore a "harbor worker" within the coverage of the Longshoremen and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 900 et seq., rather than a "seaman" under the Jones Act. On September 9, 1977, plaintiff filed a motion seeking leave to amend his complaint. In addition to the Jones Act and unseaworthiness claims, plaintiff now seeks recovery on a theory of owner occasioned negligence. He alleges that this action is maintainable under § 905(b) of LHWCA. Defendant opposes this motion arguing that under § 905(a) of LHWCA, compensation provided under LHWCA is a harbor worker's exclusive remedy against his employer. For the reasons set forth below, defendant's motion for summary judgment will be granted and leave to amend the complaint will be denied.

Defendant is a corporation with its principal place of business in San Francisco, California. Plaintiff was employed as a member of defendant's maintenance and repair shoregang during the month of March, 1976. On or about March 26, 1976, plaintiff was aboard defendant's paint float in the waters of San Francisco Bay alongside Pier 35. While painting the hull of defendant's ship, the SS Monterey, plaintiff was allegedly injured due to a collision between the paint float and an oil barge. Plaintiff seeks recovery based on his Jones Act claim that the defendant provided an unsafe workplace and based on a general maritime law claim that the paint float was unseaworthy.

## MOTION FOR SUMMARY JUDGMENT

The determinative issue in this motion is whether plaintiff had "seaman" status at the time of the alleged incident. The Supreme Court has defined the term seaman to mean a master or member of a crew of any vessel. *Swanson v. Marra Bros.,* 328 U.S. 1, 5, 66 S.Ct. 869, 90 L.Ed. 1045 (1946). A long established three-part test determines the issue of whether an individual is a "member of a crew" of a "vessel":

1. The allegedly unseaworthy vessel must have been a vessel in navigation;

2. The plaintiff must have been aboard that vessel primarily to perform duties which contributed to the function of the vessel or the accomplishment of its mission, e. g., aid in its navigation; and

3. The plaintiff must have had a more or less permanent connection with the vessel or with a specific group of vessels.

*Burns v. Anchor Wate Co.,* 469 F.2d 730, 732 (5 Cir. 1972); *Offshore Company v. Robison,* 266 F.2d 769, 775 (5 Cir. 1959). The Court finds that plaintiff fails to meet any one of these requirements.

Plaintiff was a fellow shoregang worker of Dwain Baker whom Judge Orrick of this District Court recently held to be a "harbor worker" within the meaning of the LHWCA and without standing to bring a claim under the Jones Act. *Baker v. Pacific Far East Line, Inc.,* Civil Case No. 76–1555–WHO, August 3, 1977. Judge Orrick found that neither Baker nor any other member of defendant's shoregang was assigned to a specific barge or specific group of barges on anything remotely resembling a "more or less permanent basis." The third requirement of the test for seaman status was not met.

█ The Court finds that Judge Orrick's reasoning was sound and fully applicable to plaintiff Buna who, like Baker, fails to satisfy the connection with a vessel requirement. In addition, unlike Baker, Buna also does not qualify under the other two criteria since his alleged accident did not occur on a "vessel in navigation" nor did his duties contribute to the function of the vessel. Since plaintiff was not a "seaman," he may not bring claims under the Jones Act or the doctrine of unseaworthiness[1] and defendant's motion for summary judgment must be granted.

1. *Was the Paint Float a Vessel in Navigation?*

Plaintiff admitted that "at the present time, the paint float has the function of a floating stage used by defendant's servants who work within the harbor of San Francisco." In his reply brief, plaintiff claims that this is not an admission that the float was exclusively a floating stage at the time of the alleged accident. Plaintiff admitted further that (1) the paint float has no navigational lights, anchors, raked bow, or crew quarters; (2) that at the present time, the paint float has no master or crew assigned

to it; and (3) that the paint float has no berthing, lodging, or feeding facilities aboard. According to the affidavit of defendant's port captain, Henry Ziobro, the paint float is not registered as a vessel with the United States Coast Guard, nor is there any such requirement. He also asserts that there is no "master" assigned to the paint float and that none of defendant's paint floats have, nor have they ever had, crews assigned to them.

Plaintiff maintains that the float was a special purpose work barge, designed for use in navigable waters, and as such, it falls within the definition of "vessel." He refers to various features of the structure which purport to support his claim including its hull with watertight compartments accessible from the main deck, its mooring lines, life rings and preservers, and its enclosed storage rooms. Plaintiff also refers to the fact that the float was located in a navigable channel and was used to transport, in navigable waters, tools, supplies, and a crew of sailors that defendant had assigned to man it.

It is well settled that a barge may be a vessel within the meaning of the Jones Act. *Producers Drilling Co. v. Gray,* 361 F.2d 432 (5 Cir. 1966). Moreover, special purpose floating structures such as dredges and drilling platforms that are more than just a means of transport on water, may also qualify as vessels under the Jones Act. *Offshore Company v. Robison, supra,* 266 F.2d at 772 (large mobile drilling platform with raked bow); *Summerlin v. Massman Const. Co. et al.,* 199 F.2d 715, 716 (4 Cir. 1952) (derrick anchored in a river); *Gahagan Const. Corporation v. Armao,* 165 F.2d 301, 305 (1 Cir.), *cert. denied,* 333 U.S. 876, 68 S.Ct. 905, 92 L.Ed. 1152 (1948) (dredge on which crew slept and ate). These special purpose structures serve functions that require exposure to the hazards of the sea and typically function at a distance from the shore. *Powers v. Bethlehem Steel Corporation,* 477 F.2d 643, 647 (1 Cir.), *cert.*

---

1. Actions based on the doctrine of unseaworthiness may not be brought by workers covered by the LHWCA. § 905(b) of this act provides in part: "The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred."

*denied,* 414 U.S. 856, 94 S.Ct. 160, 38 L.Ed.2d 106 (1973). Plaintiff cites *Offshore Company v. Robison, supra,* 266 F.2d 769, in support of his position. However, the 200 by 100 foot platform in that case operated three miles offshore, had a raked bow, navigation lights, and life boats, and quartered a crew that spent ten days at a time on board. The paint float at issue in this case had no crew quarters, no navigational lights, no raked bow, and operated adjacent to the pier or to ships docked at the pier.

■ Defendant's paint float more closely resembles those floating drydocks and platforms which courts have held are not vessels. *Atkins v. Greenville Shipbuilding Corp.,* 411 F.2d 279 (5 Cir.), *cert. denied,* 396 U.S. 846, 90 S.Ct. 105, 24 L.Ed.2d 96 (1969) (drydock); *Cook v. Belden Concrete Products, Inc.,* 472 F.2d 999 (5 Cir.), *cert. denied,* 414 U.S. 868, 94 S.Ct. 175, 38 L.Ed.2d 116 (1973) (floating construction platform); *Powers v. Bethlehem Steel Corporation, supra,* 477 F.2d at 643 (raft used as stable platform for repair of pilings). Mere flotation on water is not enough to constitute a vessel. *Atkins, supra,* 411 F.2d at 283. To be a vessel, the structure's purpose must to some reasonable degree be the transportation of passengers, cargo, or equipment from place to place across navigable waters. *Bennett v. Perini Corp.,* 510 F.2d 114, 116 (1 Cir. 1975); *Powers v. Bethlehem Steel Corporation, supra,* 477 F.2d at 647.

■ Limited movement by a drydock or other floating structure may be part of its special function and not indicate that the structure operates as a vessel in navigation. For example, the plaintiff in *Cook v. Belden Concrete Products, Inc., supra,* 472 F.2d 999, attempted to distinguish his construction platform from the drydock in *Atkins* by stressing the movement of the platform along the dock. The court rejected this argument and concluded that

" * * * the construction platform involved in this case was not designed for transportation of passengers, cargo, or equipment from place to place across navigable waters. Of course, some movement, both perpendicular and lateral, is necessarily part of the regular operation of floating drydocks and similar structures. However, capability to sustain such movement has been held insufficient to establish that such craft are constructed for the purpose of navigation." 472 F.2d at 1002.

The paint float in this case did move around the ship that was being painted, but this movement did not change the basic character of the structure. As in *Powers v. Bethlehem Steel Corporation, supra,* where the court found that a 5 by 25 foot raft used by men repairing pilings was designed to be a stable platform rather than a craft designed to transport passengers, cargo, or equipment, 477 F.2d at 647, this Court finds that the defendant's paint float was primarily designed to be a stable floating platform for men doing painting and repair work on ships docked at the pier.

The Court of Appeals for the Fifth Circuit recognized in *Cook supra,* that they may have reached a different result had the accident in question occurred while the structure was being towed across navigable waters. 472 F.2d at 1002. However, the movement of the paint float in this case was around the ship being painted and this movement is not different in kind from movement of the raft under the pier in *Powers, supra,* or movement along the dock in *Cook.* The fact that the float carried painting supplies and men who used these supplies does not establish that "to a reasonable degree" the structure's purpose was to transport these men and supplies across navigable waters. The limited movement was incidental to the primary purpose of the float—providing a stable platform from which men could perform maintenance work on adjacent ships. Accordingly, this Court holds that as a matter of law, the defendant's paint float was not a vessel.

*2. Was Plaintiff Aboard to Aid in Navigation or Any Other Function of the Vessel?*

■ Having concluded that the paint float was not a vessel and that the movement of the float was incidental to its use as staging for the repair and painting of docked ships and did not constitute naviga-

tion, it follows that plaintiff was not on board primarily to aid in navigation. Helping to guide the float around the ship that was being painted was merely an action necessary to facilitate the maintenance work that he had been hired to perform. Plaintiff also fails to meet this second requirement for seaman status.

3. *Did Plaintiff Have a More or Less Permanent Connection with the Vessel?*

■ Plaintiff must establish that he had a "more or less permanent connection" with one or a specific group of defendant's vessels. In deciding *Baker v. Pacific Far East Line, Inc., supra,* Judge Orrick found that neither plaintiff Baker nor any other member of the defendant's shoregang was assigned to a specific vessel or group of vessels on "anything resembling a more or less permanent basis". (Reporter's Transcript, August 3, 1977, page 7, Finding of Fact No. 21). This finding was based on, among others, the following facts: (1) plaintiff was not on any ship's articles at the time of the injury; (2) plaintiff was under the direction of shoreside personnel who hired him on an as-needed basis and paid him an hourly wage; (3) plaintiff was under no orders from masters or officers of any vessel; (4) plaintiff was assigned by the Sailors Union of the Pacific to the barge gang and not to a specific identifiable barge or group of barges; (5) shoregang members were ordered to perform temporary task oriented work on a particular barge or particular barges; (6) plaintiff rarely worked on a single barge for more than a few consecutive hours; (7) plaintiff lived, ate and slept on shore and did not replace, even on a temporary basis, any member of the crew of any vessel. Based on an application of the law to these facts, Judge Orrick concluded that plaintiff Baker failed to satisfy the "more or less permanent connection to a vessel" requirement and thus was not a seaman under the Jones Act.

■ Judges of the same district court customarily follow a previous decision of a brother judge upon the same question except in unusual or exceptional circumstances. *Cepo v. Brownell,* 147 F.Supp. 517, 521

(N.D.Cal.1957). Plaintiff Buna's situation was not sufficiently distinguished from that of plaintiff Baker to cause this Court to depart from Judge Orrick's sound holding in the *Baker* case.

■ Like Baker, plaintiff was a member of a shoregang and worked under the supervision of land-based superiors. The fact that he was a full-time member of the work crew and was paid weekly rather than hourly does not strengthen his connection to a particular vessel or group of vessels. Plaintiff admits that as a member of the shoregang he was assigned to a variety of tasks both on and offshore, including moving furniture in defendant's office building, painting stripes in defendant's parking lots, and performing miscellaneous maintenance tasks in defendant's storerooms and office. According to the affidavit of Richard Russell, defendant's port engineer, neither Buna nor any other member of the shoregang had any responsibility for the continuous maintenance of a single barge or group of barges. Plaintiff does not refute this assertion.

■ As a shoregang worker, plaintiff was assigned from day to day to different tasks on various barges, ships, or shore installations. To satisfy the "connection with" criterion, the relationship between the individual and the vessel or specific vessels must not be spasmodic and must be substantial in point of time and work. *Braniff v. Jackson Ave.-Gretna Ferry, Inc.* 280 F.2d 523, 528 (5 Cir. 1960). Buna's connection with any specific vessel or group of the approximately 1,000 barges and ships of defendant was spasmodic. His connection was essentially with the shoregang and not with a specific group of vessels.

■ Plaintiff also fails to establish that he was a crew member of the SS Monterey, the ship that he was painting. He cites *Porsche v. Gulf Mississippi Marine Corp.,* 390 F.Supp. 624 (E.D.La.1975), for the proposition that a temporary worker may become a crewmember. However, unlike the plaintiff in *Porsche* who was specifically assigned to replace temporarily a crewmem-

ber of a ship and who took his orders from the ship's officers, plaintiff was simply assigned the task of painting the SS Monterey and did not in any way become affiliated with the crew of that ship. The affidavit of Sven Rogenes, the Master of the SS Monterey on the date of the accident, indicates that plaintiff was not subject to the command or orders of Rogenes or any other officer of the Monterey, and that plaintiff did not replace or relieve any member of that ship's crew. At all times in question, plaintiff remained part of a shoregang under the direction of shore-based employers. Plaintiff's short-term task of painting the hull of the SS Monterey did not serve to establish "a more or less permanent connection" with that ship.

■ Finally, the fact that plaintiff is a member of a seafaring union and may have been performing work that a seaman might also have performed, does not mean that he was a crewmember within the meaning of the federal maritime law. *Sullivan v. American President Lines, Ltd.,* 206 F.Supp. 547 (N.D.Cal.1961).

The three criteria discussed herein were designed in part to distinguish between seamen and crewmen under the Jones Act and longshoremen/harbor workers covered by the Longshoremen and Harbor Workers' Compensation Act. In failing to meet any and all of the criteria necessary to be classified as "a member of a crew" of a "vessel", plaintiff is determined to be a harbor worker rather than a seaman. As such, he comes under the exclusive jurisdiction of the LHWCA and may not recover from his employer, the defendant, either under the Jones Act or under the general maritime law doctrine of unseaworthiness. Accordingly, defendant's motion for summary judgment will be granted as to both counts of plaintiff's original complaint.

**2.** In 1972, the LHWCA was amended. Section 905(b), which was added, provides in part: "In the event of injury to a person covered under the chapter caused by the negligence of a vessel, then such person * * * may bring an action against such vessel * * *."

**3.** 33 U.S.C. § 905(a) provides in relevant part: "The liability of an employer prescribed in section 904 of this title shall be exclusive and in

## MOTION TO AMEND

■ Plaintiff now seeks to amend his complaint in order to bring a negligence action against defendant under § 905(b)[2] of the LHWCA. Leave to amend will be denied for the Court finds that under 905(a)[3] of the LHWCA, an employer may only be held liable for compensation benefits and may not be sued for negligence.

There is no stated exception in § 905(a) of the LHWCA that would allow an employee to bring a § 905(b) action against a vessel owner who is also the employer. Nevertheless, some courts have recognized the action that plaintiff seeks to bring. *Smith v. M/V Captain Fred,* 546 F.2d 119 (5 Cir. 1977); *Griffith v. Wheeling Pittsburgh Corp.,* 521 F.2d 31 (3 Cir.), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1975). The *Griffith* court determined that since unseaworthiness actions against vessel owner/employers were not barred by the exclusive remedy language in the LHWCA prior to the 1972 amendments, *Reed v. S.S. Yaka,* 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963), this same exclusive remedy language should not bar negligence claims against a vessel owner/employer under § 905(b). 521 F.2d at 43. This Court disagrees for the reasons set forth below.

First, under the fundamental principles of workmen's compensation, an employee is assured of certain benefits irrespective of fault while the employer who must pay these benefits is assured of limited liability. *Galimi v. Jetco, Inc.,* 514 F.2d 949, 952 (2 Cir. 1975). This tradeoff between certainty of benefits and limited employer liability would be distorted if injured employees were permitted to receive compensation under the LHWCA and to sue their employers for negligence. As the *Griffith* court admitted, "There is no argument in logic and reason why an employer who owns barges

place of all other liability of such employer to the employee * * * and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death * * *."

should be treated less favorably than an employer who owns trucks." 521 F.2d at 42. Thus, barring § 905(b) negligence suits when the vessel owner is the employer is both logical and consistent with the philosophy underlying workmen's compensation schemes.

Second, negligence actions are not equivalent to actions based on the doctrine of seaworthiness for purposes of sidestepping the exclusive remedy language in the LHWCA. *Arvidson v. Dillingham Corp.*, 462 F.2d 1 (9 Cir.), *cert. denied*, 409 U.S. 983, 93 S.Ct. 321, 34 L.Ed.2d 247 (1972). Interpreting the pre-1972 amendment LHWCA, the *Arvidson* court saw a clear distinction between the traditional, absolute, and non-delegable obligation of a shipowner to provide a seaworthy vessel and ordinary negligence by that shipowner. The court concluded that the right to proceed against a vessel owner/employer should not be extended to negligence claims.

The Court of Appeals for the First Circuit followed the *Arvidson* court in distinguishing between seaworthiness and negligence in deciding *Murphy v. Woods Hole, Martha's Vineyard and Nantucket Steamship Authority*, 545 F.2d 235 (1976). Although the *Murphy* decision interpreted the pre-amendment law, the court criticized *Griffith* and discussed the 1972 amendments in concluding that an injured harbor worker's negligence action against his employer is barred by the exclusive remedy provision (§ 905) of the LHWCA.

As the *Griffith* court noted, the 1972 amendments substantially increased the workmen's compensation benefits payable under the LHWCA. 521 F.2d at 39. Plaintiff has received over $2,000 in compensation benefits under the LHWCA for the injury which is the subject of this lawsuit. He may not also sue his employer for negligence. Accordingly, leave to amend will be denied.

IT IS HEREBY ORDERED that defendant's motion for summary judgment is granted.

IT IS HEREBY FURTHER ⟂ that plaintiff's motion to amend h⟂ plaint is denied.

IT IS HEREBY FURTHER ORDERED that counsel for defendant will prepare an appropriate form of judgment, submit it to counsel for plaintiff for approval as to form, and submit it to the Court for execution within ten (10) days of the date of this order.