**Grace G. FLEMING, et al.**

v.

**PORT ALLEN MARINE SERVICE, INC. and ABC Company.**

Civ. A. No. 82–29–B.

United States District Court, M.D. Louisiana.

Dec. 9, 1982.

Stanley K. Hurder, Baton Rouge, La., for plaintiffs.

Edward F. Kohnke, IV, New Orleans, La., for defendants.

POLOZOLA, District Judge.

This matter is before the court on the motion of the defendant, Port Allen Marine Service, Inc. (PAM), for summary judgment. No oral argument is required on this motion.

The plaintiff, Grace G. Fleming, filed this action as tutrix of Renata M. Gibson, the sole surviving child of Leroy Moore, who drowned while working as a welder for PAM at PAM's barge and towboat repair facility. While standing on a small floating work platform adjacent to the drydock which was holding a vessel upon which he was performing repair work, Moore fell

overboard and drowned. The plaintiff has sued PAM for its alleged negligence in causing Moore's death and has also sued the unidentified owner of the barge being repaired, which was denominated as the ABC Company in plaintiff's complaint.

PAM has now filed a motion for summary judgment. PAM contends plaintiff's suit should be dismissed on the ground that plaintiff's sole remedy against PAM is under the Longshoreman and Harbor Worker's Compensation Act, Title 33, U.S.C. Section 901 et seq. Compensation has been awarded to the plaintiff by an administrative law judge pursuant to the LHCA and PAM has complied with the order. Thus, PAM argues that plaintiff's suit for negligence is barred by 33 U.S.C. § 905(a). The principal issue raised by the plaintiff in opposition to this motion is whether the structure upon which Moore was working when he drowned may be properly characterized as a "vessel". If the structure is a vessel, plaintiff may bring this suit under 33 U.S.C. § 905(b).

For reasons which follow, the Court finds that the structure on which Moore was working at the time of his death is not a vessel. Therefore, plaintiff has no claim for negligence against PAM. 33 U.S.C. § 905(a).

PAM maintains a shipyard on the Intercoastal Waterway near Port Allen, Louisiana, for the construction of new barges and the repair and cleaning of barges and other vessels. Moore worked at this facility as a tacker. At the time of his death he had been working either upon a small floating work flat or a nearby drydock. For purposes of this motion the Court will assume that Moore was on the work platform or pontoon when his accident occurred. There is no dispute that Moore met the status and situs requirements of the LCHA and was a covered employee of PAM under that Act. The only issue before the Court is the legal characterization of the work flat.

The work flat in question was a steel structure which measured approximately 20 feet in length by 12 feet in width by 28 inches in depth. It had no self-propulsion system, no navigation lights, and no means to store materials below deck. The work flat was not equipped with any hatches, and had only two small openings in the deck to facilitate removal of water from its interior. It was used solely to provide an auxiliary work surface for use in PAM's ship repair activities. In this role the work flat did hold men and materials on the water. Its primary role was to serve as a place for welders to stand as they repaired ships. When movement of the structure was required, the flat was pulled around the PAM shipyard by a tugboat. However, the flat never left the PAM facility and was used exclusively within PAM's shipyard.

The Court must begin its consideration of the applicable law by reviewing the often-cited case of *Offshore Co. v. Robison,* 266 F.2d 769, 779–780 (5 Cir.1959), a Jones Act case which provided:

"Attempts to fix unvarying meanings have [sic] a firm legal significance to such terms as 'seaman', 'vessel', 'member of a crew' must come to grief on the facts. These terms have such a wide range of meaning, under the Jones Act as interpreted in the courts, that, except in rare cases, only a jury or trier of facts can determine their application in the circumstances of a particular case. Even where the facts are largely undisputed, the question at issue is not solely a question of law when, because of conflicting inferences that may lead to different conclusions among reasonable men, a trial judge cannot state an unvarying rule of law that fits the facts."

However, despite the above language, the Fifth Circuit has not hesitated to affirm lower court decisions which granted summary judgment with respect to vessel status where it was warranted. E.g. *Atkins v. Greenville Shipbuilding Corp.,* 411 F.2d 279 (5 Cir.) cert. denied 396 U.S. 846, 90 S.Ct. 105, 24 L.Ed.2d 96 (1969); *Cook v. Belden Concrete Products, Inc.,* 472 F.2d 999 (5 Cir.) cert. denied 414 U.S. 868, 94 S.Ct. 175, 38 L.Ed.2d 116 (1973). The *Atkins* and *Cook* cases are particularly applicable to the issue now before the Court.

In *Atkins v. Greenville Shipbuilding Corp.,* supra, the Fifth Circuit held as a matter of law that a floating drydock was not a vessel. The Court affirmed a summary judgment which had been rendered against a welder covered by the LHCA who tried to escape the exclusive remedy provision of § 905(a) by relying on the unseaworthiness doctrine set forth in *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). In holding the floating drydock was not a vessel the Fifth Circuit stated: "Mere flotation on water does not constitute a structure a 'vessel' for purposes of salvage nor warranty of seaworthiness. The elements of risk and exposure to the hazards of the sea, necessary for the operation of and common to both principles, is absent upon floating drydocks." 411 F.2d at 283.

The plaintiff in *Cook v. Belden Concrete Products, Inc.,* supra, was injured while working on a floating construction platform upon which concrete barges were fabricated. The platform measured 180 feet by 54 feet, had no motive power, and was equipped with pipes and pumps to facilitate flooding its interior compartments for the purpose of submerging the platform and launching the completed barges manufactured upon it. The flat deck barge was occasionally moved to different positions along its owner's dock to pick up materials. After a set of barges was completed, the deck barge would be towed into deeper water to launch the completed barges. The plaintiff in *Cook* contended that *Atkins* did not control because the platform in *Cook* was capable of limited movement and was, in the normal course of its service, towed from point to point in the navigable waters off the defendant's yard. However, the Fifth Circuit held that permanence of fixation is not the criterion governing the status of floating dry docks and similar structures. Quoting from *The Robert W. Parsons,* 191 U.S. 17, 30, 24 S.Ct. 8, 12, 48 L.Ed. 73 (1903), the Fifth Circuit stated that "the 'determinative factors upon the question of jurisdiction [are] the purpose for which the craft was construed and the business in which it is engaged.'" 472 F.2d 1011. Af-

ter reviewing the record the court held that the platform was not designed for transportation of passengers, cargo, or equipment across navigable waters. The court also found that although some movement was necessarily a part of the regular operation of the structure, the capability to sustain such movement did not establish that the craft was constructed for the purpose of navigation. Under the facts of the case, the court in *Cook* found as a matter of law that the platform was not a vessel.

As in the *Cook* case, this Court finds as a matter of law that the structure upon which Moore was working at the time of his death was not a vessel.

A careful review of decisions from other circuits and from district courts within the Fifth Circuit also support the Court's conclusion. Thus, in *Powers v. Bethlehem Steel Corporation,* 477 F.2d 643 (1 Cir.) cert. denied, 414 U.S. 856, 94 S.Ct. 160, 38 L.Ed.2d 106 (1973) a Jones Act plaintiff was injured upon a 25 by 5 foot "raft" or "float". Workmen used the float as a place to stand while they chipped, sandblasted and poured concrete around piles in water. The workmen would move the float from its docking at a pier to the worksite by poling or pulling on lines. The float was used to carry the workmen and their equipment to the worksite. The First Circuit affirmed the judgment of the lower court which found the float was not a vessel, stating:

> . . . A stage designed to be used in connection with painting or repairing the side of a vessel would not become [a vessel] merely because it was capable of floating on the water, though it were used by workmen in thus painting and repairing, while the same was on the water, rising and falling with the tide, or because it could be moved alongside or around such vessel, and while being moved was capable of holding persons and property . . .

> \*　\*　\*　\*　\*　\*

The purpose and business of the present craft was not the transportation

of passengers, cargo, or equipment from place to place across navigable waters. It was tied to the pier or its pilings virtually all of the time. Nearly as long as the pier was wide, it was used to provide a stable platform for men repairing defective piles. While so used, it was lashed with the other raft to piles, planks being placed from raft to raft, and was indistinguishable from a permanent floating dock . . . Its occasional 'voyages'—when towed by workboat from one pier to another—were no different from the dragging of a section of floating dock from one location to another. 477 F.2d at 647

See, also, *Buna v. Pacific Far East Line, Inc.,* 441 F.Supp. 1360 (N.D.Cal.1977); *Mayfield v. Wall Shipyard, Inc.,* 510 F.Supp. 605 (E.D.La.1981); *Berfect v. American Commercial Barges Lines,* 509 F.Supp. 734 (E.D.La.1981).

The plaintiff relies on *Slatton v. Martin K. Eby Construction Co., Inc.,* 506 F.2d 505 (8 Cir.1974). However, the Court finds that the *Slatton* case is not applicable and is distinguishable on its facts from the case now before this Court.

■ In summary, the Court finds the platform upon which Moore was working at the time of his death was not primarily designed to serve in navigation. Therefore, the Court finds as a matter of law that the platform is not a vessel. Thus, plaintiff's exclusive remedy against PAM is under the Longshoreman & Harbor Worker's Compensation Act. For these reasons, PAM's motion for summary judgment will be granted.

■ The plaintiff has also sued another defendant as the ABC Company. This defendant has not been named or served with the complaint. Ordinarily, the Court would dismiss a suit against an unnamed, unserved "ABC Company" defendant. However, the Court will give plaintiff 15 days from the date of this opinion within which to amend the complaint to name the proper defendant herein. If the plaintiff fails to amend the complaint within 15 days, the Court shall dismiss plaintiff's suit in its entirety.

Therefore:

IT IS ORDERED that the motion of Port Allen Marine Services, Inc. for summary judgment be and it is hereby GRANTED.

IT IS FURTHER ORDERED that plaintiff shall have 15 days from the date of this order to amend the complaint to name the proper defendant herein for the "ABC Company". If plaintiff fails to timely amend the complaint as required by this order, plaintiff's suit shall be dismissed in its entirety.