STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 08-1407


FRANK CAVAZZO

VERSUS

GRAY INS. CO., ET AL.


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2006-3674
HONORABLE DAVID KENT SAVOIE, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and
Jimmie C. Peters, Judges.

                                                              **AFFIRMED.**


Jeffrey Martin Cole
Plauche, Smith & Nieset
P.O. Drawer 1705
Lake Charles, LA 70602
(337) 436-0522
Counsel for Defendants Appellants:
The Gray Insurance Company
Dunham Price Group, LLC
Dunham Price, LLC
Dunham Price Marine, LLC
Material Handling, LLC

**Rex Douglas Townsley**
**The Townsley Law Firm**
**3102 Enterprise Blvd.**
**Lake Charles, LA 70601**
**(337) 478-1400**
**Counsel for Plaintiff Appellee:**
**Frank Cavazzo**

**J. Mac Morgan**
**Attorney at Law**
**7040 Canal Blvd.**
**New Orleans, LA 70124**
**(504) 286-5928**
**Counsel for Plaintiff Appellee:**
**Frank Cavazzo**

**SAUNDERS, Judge.**

In this is a case, an employee filed a petition for damages against his employers, alleging he was a seaman under the Jones Act and § 905(b). The employers and their insurer responded by filing a motion for summary judgment seeking a judgment that the employee's sole remedy was under the Longshoreman & Harbor Workers' Compensation Act, thus, his claims against them under both the Jones Act and § 905(b) should be dismissed.

The employee then filed his own motion for summary judgment seeking a declaration that he was a Jones Act seaman. The trial court, recognizing that this case was not going to a jury, discovery was complete, and there was no dispute on what job duties the employee performed, determined that the employee was a Jones Act seaman. Accordingly, the employee's partial motion for summary judgment was granted while the remaining summary judgment requests were denied.

The trial court designated his judgment regarding the employee's status as final and granted the employers and their insurer a devolutive appeal. They raised two assignments of error. We affirm the trial court's judgment that the employee was a Jones Act seaman, and we dismiss all other issues raised as they are not properly before this court.

**FACTS AND PROCEDURAL HISTORY:**

Plaintiff/Appellee, Frank Cavazzo (Cavazzo) was injured when he attempted to disembark from an empty barge at the Calcasieu River Ship Channel marine facility on Lake Charles. The barge and facility were owned and operated by his employers, Dunham Price Group, LLC; Dunham Price, LLC; Material Handling, LLC; and Dunham Price Marine, LLC. The insurer for these entities is The Gray Insurance Company (the entities and insurer collectively "the appellants.").

Cavazzo filed a petition asserting Jones Act and § 905(b) claims under the Savings to Suitors clause on August 10, 2006, in the Fourteenth Judicial District Court. This case will not be a jury trial. After Cavazzo amended his petition on January 30, 2007, the appellants filed a motion for summary judgment seeking a dismissal of Cavazzo's claims on December 4, 2007. In response, Cavazzo filed a motion for partial summary judgment on February 22, 2008, seeking, among other things, a declaration that he was a Jones Act seaman.

The cross motions for summary judgment were heard on March 24, 2008. During the hearing, all the parties agreed that no facts as to what Cavazzo did on the job were in dispute, thus, as this was not to be a jury trial, the matter was ripe for summary judgment. Evidence of such is the following exchange that took place between the trial court and the lawyer for the appellants:

THE COURT:

> Cross motions for summary judgment. Is there really any material factual dispute about what the guy did, how it happened, anything of that sort?

MR COLE:

> I don't believe - - well, what he did, I don't believe there is any factual dispute. I think - - before the Court, you have everything that you would need to determine his status, his seaman status, even at the trial on the 21st. I don't think you can hear any more evidence then what you have got before you today on that particular issue. There is some controversy over whether he was really injured the way he says and that kind of thing.

THE COURT:

> I understand that. But insofar as the motions for summary judgment are concerned, as I appreciate it, we are really concerned about what his status is. Is he a seaman, or is he under the Longshoremen Harbor Workers' Act?

2

MR COLE:

> Right. There is two aspects to is, Your Honor; and you can rule by summary judgment on either or both of them. The plaintiff alleges that he is a Jones[] Act seaman; and then there is an alternative 905(B) claim. But I think that all of the evidence that you need to determine if he has got either of those claims is before the Court today.

After hearing the arguments and taking the matter under advisement, on August 1, 2008, the trial court granted the portion of Cavazzo's motion for summary judgment declaring him a Jones Act seaman. Further, the trial court denied all other motions made by the parties for summary judgment. The trial court signed a judgment in accordance with La.Code Civ.P. art. 1915(B) designating the order granting Cavazzo's motion for partial summary judgment a final judgment, and granting the appellants' devolutive appeal that is now before this court. In that appeal, the appellants have raised the following two assignments of error:

**ASSIGNMENTS OF ERROR:**

1.  The Trial Court erroneously granted partial summary judgment to [Cavazzo] holding that [he] is a Jones Act seaman and entitled to bring his claims for damages under the Jones Act, and erroneously concluding that [Cavazzo] is not a longshoreman whose claims for damages are limited to benefits under the Longshoreman and Harbor Workers' Compensation Act.

2.  The Trial Court erroneously denied [the appellants'] Motion for Summary Judgment seeking dismissal of [Cavazzo's] lawsuit claiming damages under the Jones Act, and alternatively, under §905(b).

**ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO:**

In their first assignment of error, the appellants assert that the trial court erroneously granted partial summary judgment to Cavazzo, holding that he is a Jones Act seaman and entitled to bring his claims for damages under the Jones Act, and erroneously concluded that Cavazzo is not a longshoreman whose claims for damages are limited to benefits under the Longshoreman and Harbor Workers' Compensation

3

Act. In their second assignment of error, the appellants claim that the trial court erroneously denied their motion for summary judgment seeking dismissal of Cavazzo's lawsuit claiming damages under the Jones Act, and alternatively, under §905(b). We find no merit in the appellants' assertion that the trial court erred in finding that Cavazzo is a Jones Act seaman, and find that the remaining issues that the appellants raised are not before this court.

> Appellant courts review summary judgments *de novo* under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Stated differently, this court "asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appellant is entitled to a judgment as a matter of law."

*Lovejoy v. Bergeaux*, 03-862, p. 3 (La.App. 3 Cir. 12/10/03), 862 So.2d 490, 492, *writ denied*, 04-13 (La. 3/19/04), 869 So.2d 851, *cert. denied*, 543 U.S. 819, 125 S.Ct. 58 (2004) (citations omitted).

The United States Supreme Court, in *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368, 115 S.Ct. 2172, 2190 (1995)(citations omitted), stated the following:

> [W]e think that the essential requirements for seaman status are twofold. First . . . "an employee's duties must 'contribute to the function of the vessel or to the accomplishment of its mission.'" The Jones Act's protections, like the other admiralty protections for seamen, only extend to those maritime employees who do the ship's work. But this threshold requirement is very broad: "All who work at sea in the service of a ship" are *eligible* for seaman status.
> Second, and most important for our purposes here, a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature.

In the case before us, the following is an excerpt of the deposition of Mr. David Godsey, a representative of one of the appellants, Dunham Price Group, LLC:

Q      What is the function of one of those M deck barges as far as you know? If you had to tell me what's the purpose, what's it do, what's its function - -

4

A    The load that we put on it.

Q    Did the work that Mr. Cavazzo do when he was working on one of those barges, did it contribute or further that function, contribute to the accomplishment of the function?

A    Yeah.

Q    And the same thing on the boat. What is the purpose of the function of these two tugboats, the "Brandy Jo" and the "Mr. Cass"?

A    When used to flip the barges around, was to exactly that, extract it from the slip, turn it around and put it back in the slip.

Q    And when Mr. Cavazzo would be working on the boat, his work would contribute to the accomplishment of its function?

A    Yeah, if he hooked the boat up to the barge and unhooked it, yes, sir.

This testimony from one of the appellants clearly establishes that the first requisite of the *Chandris* test is met. Cavazzo "contribute[d] to the function of the vessel or to the accomplishment of its mission." *Chandris, Inc.*, 515 U.S. at 368.

With regard to the second part of the *Chandris* test, we must determine whether Cavazzo was connected to a vessel or fleet of vessels that were in navigation. If so, we must then determine whether Cavazzo's connection was substantial in both its duration and its nature.

It is clear to this court, and the appellants apparently concede, as they put forth no argument otherwise, that Cavazzo was connected to a fleet of vessels. The bareboat chartered deck barges and the two tugboats, the *Brandy Jo* and the *Mr. Cass*, were under the control of Cavazzo's employer, Material Handling. Therefore, they constituted an identifiable fleet of vessels that Cavazzo worked with daily.

The appellants did argue in brief that the fleet of vessels were not in navigation. They cite *Cook v. Belden Concrete Products, Inc.*, 472 F.2d 999 (5th Cir. 1973) to

5

support this argument. They contend that the barges Cavazzo loads and unloads are made simply to store cargo and, thus, not vessels in navigation under the jurisdiction of the Jones Act. We find this argument unconvincing.

In *Cook*, our United States Fifth Circuit Court of Appeals, citing *The Robert W. Parsons*, 191 U.S. 17, 30 24 S.Ct. 8, 12 (1903), stated that the "determinative factors upon the question of jurisdiction [are] the purpose for which the craft was constructed and the business in which it is engaged." *Cook*, 472 F.2d at 1001. However, the *Cook* court went on to state:

> Conventional ships and *barges* as well as such unconventional craft as submersible drilling barges and floating dredges which are designed for navigation and commerce *are vessels within general maritime and Jones Act jurisdiction* and retain such status even while moored, dry-docked, or otherwise immobilized and secured to land.

*Id.* (emphasis added).

In this case, the fleet that Cavazzo was connected to consisted of barges and two tugboats. Barges are constructed to store *and transport* cargo. The two tugboats were used to help load and, on at least four occasions, transport that cargo. The business that the fleet of vessels were engaged in involves delivery of that cargo to a destination that is reached by the sea. As such, it is clear to this court that the fleet that Cavazzo contributed to the function of were vessels under the Jones Act.

Next, we must determine whether Cavazzo's connection to the fleet was "substantial in terms of both its duration and its nature." *Chandris, Inc.*, 515 U.S. at 368. Regarding the duration of the work and its connection to the fleet, Cavazzo testified that he spent seventy percent of his time at work loading barges, while the remaining thirty percent of his time he was doing maintenance. The following is the pertinent testimony of Cavazzo:

6

Q    So 70 percent of the time you are loading barges, 30 percent of the time you are either unloading at the button house or you are doing some maintenance?

A    Correct.

. . . .

Q    Now, in the 70 percent of the time that you are loading the barge, how much of that time do you spend on the barge as opposed to one the wharf or somewhere else on the facility? I mean, you talked about checking the load and pumping water out and hooking up onto the cables when you flipped the barge. All of those things happened when you are loading, right?

A    Correct.

This testimony was not refuted by the appellants, and no records of the amount of time an employee spent on land as opposed to on a vessel were kept. As such, there is only one reasonable view of this evidence, that Cavazzo worked approximately seventy percent of the time on vessels under the jurisdiction of the Jones Act. We find that such an amount of time working is substantial. See *Danos v. McDermott, Inc.*, 563 So.2d 968 (La.App. 1 Cir. 1990).

Finally, after having established that Cavazzo's connection to the fleet was substantial in its duration, we must decide whether Cavazzo's connection to the fleet was substantial in its nature. We find that the nature of the connection was substantial.

Cavazzo's work consisted primarily of loading barges, while secondarily he would unload barges or perform maintenance on either a barge or one of the tugboats. In loading the barges, he had to "flip" the barges around, i.e. turn the barge around once it was loaded to its middle. This was done so that he could load the other side of the barge. When flipping a barge, it was required that Cavazzo and the crew of workers would use of one of the two tugboats. In this process, Cavazzo would

7

unhook the barge, ride in the tugboat to turn the barge around then handle the lines on the barge and handle the face wires on the tugboat while the barges were floating and being moved on the Calcasieu River Ship Channel. According to Cavazzo's undisputed testimony, this would happen almost daily, some days more than once. On such days a "six-pack" of empty barges would arrive at the harbor, and the loading of all six would involve flipping each of the six. The flipping process took two hours per barge, and it usually took two to three days for a "six-pack" of barges to arrive empty and leave fully loaded. This testimony correlates with Cavazzo's testimony that he loaded barges about seventy percent of the time.

Further, Cavazzo checked the engines on the tugboats to make sure they had the correct level and quality of oil and cleaned the tugboats. Finally, Cavazzo, on four different occasions, served as a tugboat deckhand on trips from Lake Charles to Beaumont to unload the barges the tugboats were transporting.

We find that all of these duties are clearly seaman's duties. See *Scheuring v. Traylor Bros., Inc.*, 476 F.3d 781 (9th Cir. 2007) and *Delange v. Dutra Constr. Co. Inc.*, 183 F.3d 916 (9th Cir. 1999). As such, we find that Cavazzo meets every aspect of the second prong of the *Chandris* test. He has "a connection to . . . an identifiable group of such vessels[] that is substantial in terms of both its duration and its nature." *Chandris, Inc.*, 515 U.S. at 368.

In their second part of this assignment of error, the appellants claim that the trial court erroneously concluded that Cavazzo is not a longshoreman whose claims for damages are limited to benefits under the Longshoreman and Harbor Workers' Compensation Act. Finally, in their second assignment of error, the appellants claim that the trial court erroneously denied their motion for summary judgment seeking

8

dismissal of Cavazzo's lawsuit claiming damages under the Jones Act, and alternatively, under §905(b). We find that none of these issues are properly before this court.

Louisiana Code of Civil Procedure Article 1915(B) (emphasis added) states:

(1) When a court *renders* a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories, whether in an original demand, reconventional demand, cross-claim, third party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.

(2) In the absence of such a determination and designation, any order or decision which adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties and shall not constitute a final judgment for the purpose of an immediate appeal. Any such order or decision issued may be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

In *Granger v. Guillory*, 00-363 (La.App. 3 Cir. 4/26/00), 762 So.2d 640, this court dismissed an appeal taken pursuant to certification of a partial judgment denying a party's motion for summary judgment. "While certification is allowed upon Article 1915 of partial judgments which *grant* a motion for summary judgment, this statute does not authorize the certification of a judgment denying a motion for summary judgment." *Id*., at 641 (emphasis added).

All other issues raised by the appellants stem from the denial of their motion for summary judgment. As is clear by the language of Article 1915(B) and by established jurisprudence, these issues are not yet appealable and, thus, not properly before us. Accordingly, we dismiss these issues raised by the appellants.

9

**CONCLUSION:**

The appellants raised two assignments of error. We affirm the trial court's grant of partial summary judgment in favor of Frank Cavazzo and dismiss the remainder of the issues raised by the appellants. We assess all costs of this appeal to the appellants: Dunham Price Group, LLC; Dunham Price, LLC; Material Handling, LLC; and Dunham Price Marine, LLC; and The Gray Insurance Company.

**AFFIRMED.**