STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**12-142**


CLOVELLY OIL CO., LLC

VERSUS

MIDSTATES PETROLEUM CO., LLC, ET AL.


**********

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 70728B(A)
HONORABLE JOHN LARRY VIDRINE, DISTRICT JUDGE

**********

**ELIZABETH A. PICKETT**
**JUDGE**

**********

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.


**REVERSED IN PART; AFFIRMED IN PART;
REMANDED FOR FURTHER PROCEEDINGS.**

**M. Taylor Darden**
**Matthewy J. Fantaci**
**Carver, Darden, Kortezky, Tessier,**
**Finn, Blossmand & Areaux, L.L.C.**
**1100 Poydras St., Suite 3100**
**New Orleans, LA 70163**
**(504) 585-3800**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
      Clovelly Oil Co., LLC

**Matthew J. Randazzo, III**
**Christopher B. Bailey**
**Shawn A. Carter**
**Randazzo, Giglio & Bailey, LLC**
**P. O. Box 51347**
**Lafayette, LA 70505-1347**
**(337) 291-4900**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Midstates Petroleum Company, LLC**


**Raymond A. Beyt**
**Beyt & Beyt, APLC**
**700 East Unitversity Avenue**
**Lafayette, LA 70505**
**(337) 233-6771**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Midstates Petroleum Company, LLC**


**Paul J. Goodwine**
**Holly M. Occhipinti**
**Slattery, Marino & Roberts**
**1100 Poydras St., Suite 1800**
**New Orleans, LA 70163**
**(504) 585-7800**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Wells Fargo Bank, N.A.**

**PICKETT, Judge.**

The operator under a joint operating agreement appeals the trial court's grant of summary judgment in favor of a non-operator and a secured creditor of the non-operator. For the following reasons, we reverse the judgment in favor of the non-operator but affirm the judgment in favor of the secured creditor.

**FACTS**

This matter arises out of a joint operating agreement (the JOA) dated July 17, 1972, which was later assigned to Clovelly Oil Co. LLC (Clovelly) and Midstates Petroleum Company, LLC (Midstates). Clovelly is the successor in interest to the operator designated in the JOA and the former operator's 56.25% working interest as provided in the JOA and subsequent acquisitions. Pursuant to an Assignment and Bill of Sale, dated effective September 1, 2007, Midstates is the successor in interest to a non-operating, undivided 43.75% working interest as provided in the JOA. The JOA affects property situated in the Pine Prairie Field in Evangeline Parish.

Midstates secured an oil and gas lease, dated effective July 1, 2008, from Crowell Land & Mineral Corporation that covers 242.28 acres situated in Sections 27 and 35, Township 3 South, Range 1 West of Evangeline Parish. In April 2009, Midstates re-entered an abandoned Crowell Land & Mineral Corporation well and prepared the location for work on other abandoned wells situated on the Crowell leased lands.

In April 2009, Clovelly notified Midstates that Midstates' leasing activities and operations in the Pine Prairie Field were covered and affected by the JOA. Clovelly averred that any leases taken by Midstates after the date of the assignment from its predecessor, Opex Energy, LLC (Opex), (the New Leases) were subject to a claim of majority ownership by Clovelly and the right of Clovelly to be

designated as operator of the wells drilled in connection therewith. Midstates denied it was bound by the JOA because the JOA was not recorded in the public records.

Wells Fargo Bank, N.A. (Wells Fargo), as mortgagee, took certain mortgages and security interests in and to numerous oil and gas leases and production arising from those leases from Midstates, including certain leases in the Pine Prairie Field. Clovelly claimed to have an interest in certain of those mortgaged leases, i.e., the New Leases.

Clovelly filed a Petition and an Amended Petition for Breach of Contract and Declaratory Judgment, seeking judgments against Midstates and Wells Fargo, (1) declaring the respective rights and obligations of Clovelly and Midstates under the terms and conditions of the JOA; (2) declaring the interest of Wells Fargo, if any, in and to the lands, oil and gas leasehold interests, and/or oil and gas interests that are subject to the JOA; (3) requiring Midstates to comply with the terms and conditions of the JOA; and (4) for damages for Midstates' breach of contract.

Prior to answering Clovelly's Petition, Midstates filed a Motion for Partial Summary Judgment, alleging that because the JOA was not recorded, Midstates was not bound by its terms and conditions. Clovelly opposed the motion, arguing that the case did not turn on the public records doctrine but upon whether Midstates had assumed the obligation under the JOA when it acquired Opex's interest in the Pine Prairie Field. The trial court granted the motion and dismissed Clovelly's suit. On appeal, this court held that if evidence adduced at trial showed that Midstates had assumed the JOA as part of the Assignment from Opex, it was not protected by the public records doctrine. The court further determined, however, that a genuine issue of material fact existed as to whether Midstates assumed Opex's obligations under the JOA through Opex's assignment of its

2

interest in the Pine Prairie Field and, therefore, reversed the grant of summary judgment in favor of Midstates. *Clovelly Oil Co., Inc. v. Midstates Petroleum Co., LLC*, 09-1230 (La.App. 3 Cir. 4/7/10), 34 So.3d 997.

Thereafter, Midstates filed an answer to the Petition and Reconventional Demand against Clovelly and claimed in its reconventional demand that portions of certain Clovelly leases located within the Unit Area had expired due to a defective voluntary unit agreement and that Midstates took leases over that unleased acreage. Midstates, Clovelly, and Wells Fargo then filed motions for partial summary judgment or summary judgment. Clovelly and Midstates filed motions for partial summary judgment on the issue of whether the JOA applies to the New Leases. Clovelly and Wells Fargo filed Cross-Motions for Summary Judgment on the issue of whether Wells Fargo's mortgage encumbers the 56.25% working interest Clovelly claims under the JOA in the New Leases. Although this court had already determined it was not entitled to summary judgment, Clovelly filed another Motion for Partial Summary Judgment, seeking a declaration that Midstates bound itself to the terms and conditions of the JOA and acknowledged and assumed the JOA as part of the Assignment from Opex.

The trial court granted partial summary judgment in favor of Midstates, declaring that the JOA does not apply to the New Leases and in favor of Wells Fargo's, holding Wells Fargo's mortgage and security interest as to Midstates' leases in the Pine Prairie Field, the New Leases, were not subject to the JOA. The trial court denied Clovelly's partial motion for summary and certified it as a final judgment. Clovelly appealed all judgments.

### ASSIGNMENTS OF ERROR

Clovelly now assigns the following errors:

1. The district court erred in granting Midstates' motion for partial summary judgment declaring that the JOA does not apply to leases acquired by Midstates within the Unit Area *after* the Assignment from Opex, and in denying Clovelly's cross-motion for partial summary (i) seeking an order requiring that Midstates comply with the terms and conditions of the JOA governing operations of the Unit Area, (ii) recognizing Clovelly as the owner of a 56.25% working interest in all leases acquired by Midstates, and in all operations conducted by it on leases, *after* the Assignment from Opex, subject to Clovelly's payment of its proportionate share of the costs associated with such operations and leases, and (iii) recognizing Clovelly as the operator of all new operations conducted by the parties within the Unit Area.

2. The district court erred in granting Wells Fargo's motion for summary judgment, and denying Clovelly's cross-motion, and in holding that Wells Fargo's mortgage and security interest in the leases that Midstates acquired in the Pine Prairie Field subsequent to the Opex Assignment are not subject to the terms and conditions of the JOA.

## DISCUSSION

Appellate courts review summary judgments de novo, using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. *Louisiana Safety Ass'n of Timbermen-Self Insurers Fund v. Louisiana Insurance Guaranty Ass'n*, 09-23 (La. 6/26/09), 17 So.3d 350. A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). Summary judgment is favored and shall be construed "to secure the just, speedy, and inexpensive determination of every action." La.Code Civ.P. art. 966(A)(2).

The initial burden of proof is on the movant to show that no genuine issue of material fact exists. La.Code Civ.P. art. 966(C)(2). However, if the movant will not bear the burden of proof at trial, he need not negate all essential elements of his opponent's claim, but he must point out that there is an absence of factual support

for one or more elements essential to the claim. *Id.* Once the movant has met his initial burden of proof, the burden shifts to the adverse party "to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial." *Id.*

***Clovelly's Appeal of the Denial of its Motion for Summary Judgment***

To the extent that Clovelly assigns error with the trial court's denial of its motions for summary judgment, the assignments lack merit because no right of appeal lies from the denial of a motion for summary judgment. La.Code Civ.P. art. 968. This is true although the trial court certified the denial of Clovelly's motion for judgment against Wells Fargo as a final judgment pursuant to La.Code Civ.P. art. 1915(B). *Cavazzo v. Gray Ins. Co.,* 08-1447 (La.App. 3 Cir. 6/3/09), 15 So.3d 1105, *writ denied,* 09-1444 (La. 10/2/09), 18 So.3d 115.

***Does the JOA Apply to Leases Acquired by Midstates within the Unit Area after the Assignment from its Predecessor?***

The primary issue presented by Clovelly's first assignment of error is whether the JOA covers and affects the New Leases. As this determination requires interpretation of the JOA, we review the rules of contract interpretation which the supreme court restated in *Prejean v. Guillory¸* 10-740, pp. 6-7 (La. 7/2/10), 38 So.3d 274, 279:

> "[W]hen a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law." *Sims v. Mulhearn Funeral Home, Inc.,* 07-0054, p. 10 (La.5/22/07), 956 So.2d 583, 590. "Interpretation of a contract is the determination of the common intent of the parties." La. Civ.Code art. 2045. The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. *Sims,* 07-0054 at p. 7, 956 So.2d at 589; *McConnell v. City of New Orleans,* 35 La. Ann. 273 (1883). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the

contract. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911, p. 5 (La.1/14/94), 630 So.2d 759, 763. Accordingly, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties. *See Maloney v. Oak Builders, Inc.*, 256 La. 85, 98, 235 So.2d 386, 390 (1970); *McConnell*, 35 La. Ann. at 275. Most importantly, a contract "must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance." *Lambert v. Maryland Cas. Co.*, 418 So.2d 553, 559 (La.1982).

Clovelly argues Midstates is not entitled to summary judgment declaring the JOA does not apply to the New Leases. Pointing to the JOA's definition of "Unit Area," it asserts the location of the lands subject to the New Leases determines whether the leases are subject to the JOA. The JOA is a Model Form Operating Agreement first adopted in 1956 by the American Association of Petroleum Landmen. It defines "Unit Area" as:

> The term "Unit Area" shall refer to and include all of the lands, oil and gas leasehold interests and oil and gas interests intended to be developed and operated for oil and gas purposes under this agreement. Such lands, oil and gas leasehold interests and oil and gas interests are described in Exhibit "A."

Clovelly also urges that the content of Exhibit A and the fact that it was prepared by the parties, rather than a preprinted form as the JOA is, leads to the conclusion that the New Leases are subject to the JOA.

Exhibit "A" of the JOA is divided into three sections: "I. Lands subject to this agreement," "II. Interests of Parties to this agreement," and "III. Addresses of parties to which notices should be sent." Section "I. Lands subject to this agreement" reads:

The following described property situated in Evangeline Parish, Louisiana:

Township 3 South, Range 1 West

Section 23 – S½
Section 25 – All fractional
Section 26 – All fractional

6

Section 27 – All fractional
Section 28 – E½
Section 34 – Fractional E½
Section 35 – All
Section 36 – All
Section 37 – All

Township 4 South, Range 1 West

Section 1 – All
Section 2 – All
Section 3 – All
Section 4 – Fractional E½

All as is more fully shown in red on
the plat marked "Attachment I" annexed
hereto.

Attachment I is a plat on which an area is outlined in red.

Clovelly argues the JOA's definition of "Unit Area" in terms of a geographic area which includes "all of the lands" *and* leasehold interests "intended to be developed and operated," rather than in terms of specific leases, shows that the parties who confected the JOA intended it to apply to leases and interests they owned when the JOA was executed and to leases and interests in lands situated within the Unit Area they acquired thereafter. It urges the parties' use of a geographic definition for the Unit Area "prevents parties to the JOA from unilaterally acquiring competitive leases within the Unit Area."

Midstates contends the only leases subject to the JOA are leases that the parties owned when the JOA was executed or leases that were renewed or extended as provided in Section 23 of the JOA. It points to the verb tense in two of the JOA provisions as support for its position. The first provision reads:

WHEREAS, the parties to this agreement are owners of oil and gas leases covering and, if so indicated, unleased mineral interests in the tracts of land described in Exhibit "A", and all parties have reached an agreement to explore and develop these leases and interests for oil and gas to the extent and as hereinafter provided:

7

The second provision is the definition of "oil and gas interests" which are defined as "unleased fee and mineral interests in tracts of land lying within the Unit Area which are owned by the parties to this agreement."

Midstates argues the parties' use of the present tense of the verb "are" in these two provisions shows that the only leases the parties they intended to be affected by the JOA were leases owned by them at the time the JOA was executed. It also argues that if the parties wanted the JOA to apply to future acquired leases they would have included an Area of Mutual Interest[1] provision in the agreement. The parties did not include such a provision; therefore, the inference is that they did not intend the JOA to affect future acquisitions of leases. Additionally, Midstates argues that Clovelly's arguments are flawed because they negate the provisions of Section 23. Section 23 provides that if one party to the JOA secures the renewal of a lease subject to the contract, the other parties to the contract have the right to participate in the ownership of the lease if they elect to do so in accordance with the requirements set forth therein. Midstates asserts that accepting Clovelly's argument writes this provision out of the JOA.

No Louisiana case addresses the precise issue presented here, and Clovelly cites the case of *Amoco Production Co. v. Charles B. Wilson, Jr., Inc.*, 77,999 (3/12/99) 266 Kan. 1084, 976 P.2d 941, as support for its position. *Amoco* addresses almost the same issues and arguments presented by Clovelly and Midstates. There, Amoco sought to avoid the geographically-defined Unit Area as provided in the JOA at issue. In doing so, it made the same arguments raised by Midstates as to the tense of the verb "are." The court rejected that argument and accepted the defendants' argument that the geographically-defined Unit Area was

---

[1] An Area of Mutual of Interest is an area identified by the parties to a JOA for the express purpose of future development. Any leases secured within that area are subject to the JOA.

determinative of the parties' intent. Specifically, the court rejected Amoco's argument that the use of the present tense of "are" in the "Whereas" clause limited the agreement to leases that were in effect at the time the JOA was executed.

The primary reason for the court's rejection of that argument was the parties' description of the Unit Area. In rejecting the argument, the Kansas Supreme Court applied the rule of contract interpretation that typewritten language added to a form contract by the parties controls or is determinative of the parties' intent on the issue addressed in the typewritten language and concluded that the typewritten Exhibit A "prevail[ed]" because "[t]he parties specifically agreed as to what their agreement covered." *Id*. at 1103.

Louisiana jurisprudence on the inclusion of typewritten provisions in form contracts is the same as that stated in *Amoco*:

> Under elementary principles of interpretation of contracts, the written portions prevail over the printed portions when the two are in conflict; and, therefore, we find no difficulty in holding that the typewritten sentence providing that the commission would be paid 'at the act of sale' supersedes the printed clause providing that the commission is earned when the offer is accepted.

*Kuhn v. Stan A. Plauche Real Estate Co., Inc.*, 249 La. 85, 93, 185 So.2d 210, 212, (1966).

The first circuit applied this rule of interpretation to a joint operating agreement in *Martin Exploration Co. v. Amoco Production Co.*, 93-349 (La.App. 1 Cir. 5/20/94), 637 So.2d 1202, *writ denied*, 94-2003 (La. 11/4/94), 644 So.2d 1048, and held that the typewritten Exhibit A to the agreement, which identified each party's percentage of interest before payout and after payout, governed the dispute at issue, not a provision in the printed portion of the JOA. The court concluded that although the exhibit's designation of the parties' percentages conflicted with a printed provision in the agreement, which read: "[i]f any provision of any exhibit,

9

except Exhibit 'E', is inconsistent with any provision contained in the body of this agreement, the provisions in the body of this agreement shall prevail," the contract was clear and not ambiguous. *Id.* at 1207. It applied the terms of the JOA in light of the exhibit's designation of interests.

We agree with the courts' conclusions in *Amoco* and *Martin Exploration* and conclude that Exhibit A governs the claims between Clovelly and Midstates because it was prepared by the parties to the JOA and, therefore, reflects their intent as to what interests the JOA encompasses. Moreover, we do not find the parties' use of the present tense verb "are" to be an indication by the original parties to the JOA that they did not intend to acquire and develop more leases and/or properties under the terms of the JOA.

For these reasons, we reverse the judgment granting summary judgment in favor of Midstates and hold that any "unleased fee and mineral interests in tracts of land lying within the Unit Area," as delineated on Exhibit A to the JOA, were "intended to be developed and operated" by the original parties to the JOA. Therefore, if it is determined Midstates assumed Opex's rights and obligations under the JOA, any leases acquired by Midstates or Clovelly that cover land described in Exhibit A are subject to the JOA.

### *Are Wells Fargo's Mortgage and Security Interest in the New Leases in the Pine Prairie Field Subject to the Terms and Conditions of the JOA?*

The trial court also granted summary judgment in favor of Wells Fargo, holding that the unrecorded JOA did not affect Wells Fargo's security interest in the leases Midstates acquired after the JOA was assigned to Midstates. We find no error in the judgment. The JOA was not recorded in the records of Evangeline Parish, and Wells Fargo was not a party to the agreement. Therefore, Wells Fargo

was a third party and not affected by the unrecorded JOA, even though it may have had knowledge of it, which it denies.

In *Cimarex Energy Co. v. Mauboules*, 09-1170, 09-1180, 09-1194, pp. 19-20 (La. 4/9/10), 40 So.3d 931, 944, the supreme court explained the public records doctrine, which is set forth in La.Civ. Code art. 3338,[2] stating:

> The public records doctrine has been described as a negative doctrine because it does not create rights, but, rather, denies the effect of certain rights unless they are recorded. [Peter S. Title, *Louisiana Real Estate Transactions*, § 8.16 (2009)]; *Camel[v. Waller,* 526 So.2d 1086, 1089-1090 (La.1988)]; *Phillips v. Parker*, 483 So.2d 972, 975 (La.1986). In explaining the negative nature of the doctrine, this Court has stated that third persons are not allowed to rely on what is contained in the public records, but can rely on the absence from the public records of those interests that are required to be recorded. *Camel*, 526 So.2d at 1090 [citing Redmann, *The Louisiana Law of Recordation: Some Principles and Some Problems*, 39 Tul. L.Rev. 491 (1965)]. The primary focus of the public records doctrine is the protection of third persons against unrecorded interests. *Camel*, 526 So.2d at 1090; *Phillips*, 483 So.2d at 976.

The Mineral Code makes the public records doctrine applicable to joint operating agreements in Article 216[3] and provides that to be effective against third persons,

---

[2]Louisiana Civil Code Article 3338 provides, in pertinent part:

> The rights and obligations established or created by the following written instruments are without effect as to a third person unless the instrument is registered by recording it in the appropriate mortgage or conveyance records pursuant to the provisions of this Title:
>
> (1) An instrument that transfers an immovable or establishes a real right in or over an immovable.
>
> (2) The lease of an immovable.
>
> . . . .

[3] Louisiana Revised Statutes 31:216 provides:

> An agreement entered into by or among the owners of mineral rights for the joint exploration, development, operation or production of minerals thereunder shall be binding upon third persons when the agreement is filed for registry in the conveyance records of the parish or parishes where the lands affected by the mineral rights are located.

joint operating agreements must be recorded in the conveyance records of the parishes in which the lands affected by the agreements are situated.

Clovelly contends Wells Fargo is not a third person protected by the public records doctrine or Article 216. With regard to a contract, a "third person" is a person who is not a party to the contract. La.Civ.Code art. 3506(32). Moreover, the supreme court has concluded that "[b]ecause recordation is essential for effectiveness against third parties, actual knowledge by third parties of unrecorded interests is immaterial." *Dallas v. Farrington,* 490 So.2d 265, 269 (La.1986). Wells Fargo was not a party to the JOA; accordingly, it is a third person to the JOA and cannot be affected by it because it was not recorded.

Attempting to avoid application of the doctrine to its claims, Clovelly next argues Midstates cannot assign more than it owned. As noted by the supreme court in *Wede v. Niche Marketing USA, LLC*, 10-243 (La. 11/30/10), 52 So.3d 60, 63, n.6, this argument does not survive the doctrine's application:

> Louisiana's public records doctrine includes the use of a "race to the courthouse" system of recordation: "Instruments take effect as to third persons in the order in which the instruments are filed." 1 PETER S. TITLE, LOUISIANA REAL ESTATE TRANSACTIONS § 8:16 (2d ed.2008). The public records doctrine "does not create rights in the positive sense, but rather has the negative effect of denying the effectiveness of certain rights unless they are recorded." *Id.* A well-established consequence of these two principles is illustrated in *McDuffie v. Walker*, 125 La. 152, 51 So. 100, 105-106 (1909), in which this court ruled that an unrecorded contract affecting immovable property has no effect as to third persons, even when a third person has actual knowledge of that unrecorded contract.

Clovelly has not pointed to anything other than the unrecorded JOA of its right to a working interest. Therefore, Wells Fargo's mortgage and assignment does affect the New Leases. In reaching this conclusion, we have considered Clovelly's argument that we should follow the holding in *Southwest Gas Producing Co. v. Creslenn Oil Co.*, 181 So.2d 63 (La.App. Cir. 1965), *writ denied*,

12

248 La. 797, 182 So.2d 74 (1966). In *Creslenn*, the court determined that the public records doctrine did not apply to an unrecorded joint operating agreement because title to real property was not at issue and that a secured creditor's security interest in the working interest of the plaintiff was limited by the terms of the unrecorded joint operating agreement. Section 216 of the Mineral Code was enacted in 1974 as La.R.S. 9:2731; *Cresslen* was decided in 1965. Therefore, the court's decision therein is not applicable to the facts of this case.

Having affirmed summary judgment in favor of Wells Fargo, we need not address Wells Fargo's Motion to Strike or File Sur-Reply Brief and Clovelly's Opposition to Strike and Motion for Leave.

## DISPOSITION

The judgment of the trial court granting summary judgment to Midstates is reversed; the judgment of the trial court granting summary judgment to Wells Fargo is affirmed. Midstates is assessed all costs associated with Clovelly's appeal of the judgment in its favor, and Clovelly is assessed with all costs of the judgment in Wells Fargo's favor.

**REVERSED IN PART; AFFIRMED IN PART; REMANDED FOR FURTHER PROCEEDINGS.**